I call for an argument as people v. Franklin v. Dunham. Counsel, whenever you're ready, you may proceed. We have police court, counsel. My name is Richard Sturgeon. I'm here on behalf of the appellant, Franklin Dunham. And I want to be direct with the court. The state has relied heavily on Oliver v. United States. It is my opinion that for the appellant to prevail on this appeal, we must be able to distinguish Oliver and to show them how Oliver really supports us. Fortunately for me and my client, we can do that rather easily. Oliver is an open fields case. I'm sure the court are all aware of the record in this case. The word fields and open separately or together were never used until the state filed this appellate's brief. It was never urged in court, and there's reason for it. This is not an open fields case. The Oliver case, they went by, they saw there was a locked gate. No trespassing. They didn't try to go through there. They went out. They saw a field. A field which was a mile from the defendant's home. And in that field, they found a field of marijuana. Totally different from the present case. My client lived down a private road that was marked, no trespassing, dead end. It had trees around it. Unfortunately, there were pictures of it in the record, and you could not see my client's home or his buildings which were surrounding his home. The police on the 33 weeks before this incident had received enough substantiated rumor that my client was dealing or growing marijuana. No other facts were ever developed. In the record, they say we don't have probable cause. They've developed no facts. They did not apply for a warrant. They did not have a warrant when they were on my client's property. They did not have consent. My client testified that the picture that we took was shown and exhibited, the no trespassing sign, just as it was on the day in question. The two police officers said we don't remember the sign, but we have no reason to dispute it. And beyond that, they said we didn't care about it. First off, I want to point out that the trespassing statute, Chapter 720 of the Illinois Compiled Statutes, 521-3, deals with printed notice forbidding entry. And when that is posted, it is a criminal offense. It applies to any misdemeanor. When you proceed, when it is posted, there is no police officer exception in this case. It doesn't say this does not apply to police officers. You can research it between now and whenever. It does not exclude police officers. Unless, of course, there are certain exceptions. A warrant. Permission. But they don't have that. They come onto that property illegally. And for the entire time they were on that property, they were committing a Class A misdemeanor, which would keep them from being, just moving ahead a little, would keep them from being able to look at plain view. Because we know that plain view you have in the Brewer case. You have. You can't search and seize items in plain view unless you are lawfully on the premises. But we know that they're not. We know they're trespassers. And this is documented throughout. The record is clear that the police officers had no reason to dispute that. The sign was up. They went by it. The Oliver case does not apply in the present case. There was no open fields. And to quote Oliver, areas immediately surrounding the home are protected. There's a reasonable expectation. What it is saying in Oliver is that my client's protected. So Oliver supports us. And it should. But this is an insignificant case by many. It's only dealing with manufacturer of marijuana. I had a nice client, never been in trouble before. He didn't go and got sentenced, as the prosecution said, to 18 months conditional discharge. Now, can we stop there? Sure. I have a question. If you have conditional discharge slash probation, why not find what's the difference between that and guilty found guilty slash probation? But what's conditional discharge? Same as probation. But you don't have to show up the probation officer. So you still have a guilty fine. Yes, sir. That's what I was. I was trying to compare that with supervision. No, no. I told you. Okay. I wish it wasn't. My mind wouldn't be here today. Would you? Oh, no, sir. And my client works on police officers' weapons. In fact, the road was he and the other person who had it was Ron Tamberello, and Ron Tamberello is a retired police chief, as I'm sure Justin Wilson, the perch, would remember, of the Caseyville Police Department. We are here because of serious implications, but way beyond the case in chief. This is important for any farmer who looks down the road. He's got a posted road, and the police here, he's got a neighbor who doesn't like him. Well, if this case comes down and it's not reversed, the police can utilize this case and say, anytime we get enough substantiated rumor, no probable cause, we're going to go down jibs there, and you know what? We're going to find something. We're going to go into his house, into his affluence, and you know what? We find something. We're going to get him because people versus Franco Dunham says that. And I tell you what. I've been on both sides of prosecution and defending, gentlemen, and the prosecution and police academies track your cases, all criminal cases, and they teach every exception that is granted by the courts. They still do that. They do it now more than when I was young in theory. And they would come here and they would beat on this case and say, look what we've got. And this would be a corruption of the Fourth Amendment, a total corruption. This goes back to when the Red Cross were going into people's homes, no different than now. This is what there's no difference. Frankie Dunham was a nice guy who had never been in trouble with gruesome marijuana. Now, I want to point out one thing, and it troubles me. I hope he doesn't do this consistently, but the last paragraph of the third brief says, it's true that the defendant was not arrested on May 26th or even charged for another year and received a lenient sentence of 18 months conditional district. Well, I think they throw that in just to show it's not a significant case. Go ahead. Don't worry about it. Affirm it. But the next sentence really troubles me, and it should be strict, and I should have moved distracted before. However, the only plausible explanation for all that leniency was that defendant chose to cooperate with police in tracking down other offenders. Well, it's not true. It's not in the record. That's a complete lie, a complete fabrication. That is not true. I was there. I can argue, and I truly believe Jan Fist was embarrassed after he considered everything, how he could let this not be suppressed. That is my opinion. The trial judge was entitled to believe both, but there is nothing to support that sentence. The only plausible explanation for all that leniency was that defendant chose to cooperate with police. That should not be in this record. Now, we have listed it, and I've listed very clearly. If the court believes that I'm correct in all of them, then everything is suppressed from there. And think about what they did. You don't have to reach the fact that it didn't consent or not. Look at the factors. They came onto my client's property where there was no trespassing and a dead end. They did not have probable cause for a search warrant. They stated they would have gone on the property even if there had been no trespassing. And they did not have permission to be on his property. They had to pound on his door for minutes. He didn't come there. They said pound it on his door, and he came out. There's the cops pounding on his door. This is not a knock that they describe as a knock and talk. He didn't come there. He made a demand that he comes out there, and they're illegally on his property. It's not a knock and talk. It's not plain view. They pounded on him for several minutes before he came to the door, and after he told them he refused. He wouldn't let them come to his door. The one officer lied and said he had information that Dunham was involved in a meth lab. Another lie by this cop. Agent Meyer confirmed the burned lie. Dunham denied any involvement with meth, and Dunham, again, refused admittance. After the second denial, now this is the only fact that is disputed in this case. He says he sees a gun inside the home. We showed pictures. My client testified that you had to lean in to get it. And if you look at the pictures, there's no doubt in that. But I don't think we have to get in there because the initial entrance of the property is illegal. Then what do they do? They see a legal gun. They see a legal gun that my client's got a right to. He owns. He's on his own property. He's got an FYI card. He does the cop's business. He makes guns for goodness sake. Now, what do they do when they see that legal weapon? They immediately make him leave his own property, and they state they won't let him come back in. Never received any Miranda licenses. Prior to consenting to search, they don't let him go back in, and they make him come outside and sit on a picnic table. And he said he would not sign a consent form. Byrne testified he would go secure the residence and go for a search warrant. Dunham stated that they promised there'd be no arrest if he only had marijuana and no meth. They promised my client at that point immunity. They promised there'd be no arrest, and I would submit no arrest is not to be charged. When would they get this much marijuana from 400 and some clients and wait a year to charge my client? All three clients stated that five minutes transpired before consent to search was signed. Think of that. My client had told them not to block their entrance, told them not to come in twice, then sits around, and they finally sell him on it. He signs it. He takes them to outbuildings that are surrounding his home. They're curtailed. They're covered by the Fourth Amendment. He takes them quickly and screwed in a poisonous tree. And during this period of time, he also makes statements. And they know when they see the marijuana, they start asking about it. And they state, we don't advise him of Miranda until after the entire search. We tell him everything. Then they sit him down, Mirandize him on videotape and get his statement. And that's clearly, I was proud to be in front of this court when you affirmed People v. Montgomery, which was really based upon the Missouri v. Seiberg case, dealing with people who were suspected of offense. They have to sit him down in a coercive atmosphere, take their whole statement, then read the information, read the Miranda to them, then take another written or formal statement. That's what we're dealing with here. But everything's got to flow from the illegal entrance. We firmly believe it. If you notice, there was nothing in the open here, nothing in the open, even inside. And in some of these cases, the state has cited 32 or 37 cases, none of which I believe are applicable to the present case. It's a very well-drafted argument and brief, but it's not applicable to the present situation. They're being inadequate and trying to defend an indefensible position. We firmly believe that when the courts look at this, that they really feel like this case is more than just about Frankie Dunn. Frankie Dunn, you know, keep Frankie in the alleys, but for gosh sakes, don't publish a case that says that under these facts, the police can start going into everybody's home down a coastal road. Now, again, we've got the standard of review. It is sort of immersed here, and it's mushy to me, whether it's the manifest wave of the evidence, which I find when we can, but I firmly believe that the initial entrance there, there's not any question of fact. That comes down to the court being posed with a legal question based upon what they can observe and what we know. They make an illegal entry past this, and everything flows from it. It's not knock and talk. It cannot be plain viewed. Oliver does not apply. The trespassing statute is clear. And, you know, I would like to conclude my first no-opening argument with just something that's common sense to me. We don't see cases like this. And there's a reason. Prosecutors don't work cases out like this, or they don't issue them when they have cases like this. And I tell you, another reason a prosecutor, going back to my days, you don't want it is because if I believe the court rules like I think they will, it will be helpful to defense lawyers, and you never do that. Just like they should not have worked out a deal in People v. Chad Montgomery, because what do the defense lawyers have now? They've got a really good written opinion on People v. Montgomery of how the police cannot get an inappropriate confession. And that dealt with 97 burglaries. But the court here, the Fifth District, had the courage and the correctness to do it. And I would believe that you can do it in this case, too. It's not courage. It's just this is just not appropriate. And it's indefensible. I'm proud to be here on Frankie Dunham. I'm sure that the court is listening. But, again, and I don't mean to be emotional, but it was inappropriate to confuse my client and working with the police. That's why Judge Fisk gave him 18 months' petition on this charge. There's nothing in the record on that. Thank you. Thank you. Thank you, Counsel. Counsel? Good afternoon. I have tickets to the Cardinals game this evening, so I'll try to get right to the point. I would apologize, but I can't hear. It's hard in this room. If you want to move your chair up, that's fine. You cannot hear in this room. Thank you. It is hard. Okay, well, the only thing that matters in this case, really, is what happened up to the point that the officers came to the door of this defendant and knocked on it. Because at that point, they had not only enough for a terror stop, but probable cause to arrest. Could we stop there? Is there a dispute as to there being a sign? Yes, there is conflicting evidence. Was there any evidence at the hearing that there was a sign? Yes, there was evidence that there was a sign. There was evidence from the officers that they didn't see any trespassing sign. You see, the only reason I mentioned that it took so long to charge this defendant Let's stop and go back. Did one officer say that in testimony, I don't have the record in front of me, that even if there was a sign, it would still come in? Was that said at the hearing? It was said, yes. It also doesn't matter. I don't care what it matters. I just want to know what was said. I'm just trying to find facts. I'll go over it, the testimony. At the hearing, the two officers testified and the defendant testified. Both officers testified that they did not see any no trespassing sign or did not recall seeing any no trespassing sign. You understand that this hearing took place three years after the search, or at least more than two years after the search. And the defendant testified that there were no trespassing signs, not on his property, but on a road, which he did not own, but on which he had an easement. And he produced a recently taken photograph showing that a couple of years or more after the hearing, there were no trespassing signs on that road. Was that a public or private easement? Just to him, to get to his place? No, the road went to two different houses. Who maintained it? I do not know. First of all, I would say that Judge Feist was entitled to believe the officers that because the officers saw no trespassing signs, that there weren't any there the day they went there. Secondly, even if there were no no trespassing signs, they weren't posted on the defendant's property. They were posted on a road, which he didn't own, which he had no standing to object to someone driving on it. So there was conflicting evidence on whether there were no trespassing signs. The officer said they didn't see any. The defendant said they were there. They were, after the defendant moved out, sold the property, didn't own it anymore, there were no trespassing signs photographed there, but that doesn't mean they were there in the search. Photos were three years since this happened? It was at least two years after the search that the hearings on the motions to suppress were held, which is why I brought up that this defendant wasn't even charged until a year after the offense, and I wanted to show that any promise made to him that he wouldn't be arrested was in fact kept. He never was arrested. He was charged. Also, I should point out that the defense counsel's assertion that he was promising wouldn't be arrested is contrary to the testimony of the officers, which the trial judge was entitled to believe. The officers testified they didn't promise him anything. But if he was promising he wouldn't be arrested, he wasn't. But it really doesn't matter whether no trespassing signs were there or not. As I said, once the officers arrived at the defendant's front door and knocked, they had sufficient grounds for a terrorist threat. They also had probable cause to arrest, and I'll tell you why. They had received an uncorroborated tip that the defendant was selling marijuana. But as soon as they got to the house, that tip was absolutely corroborated because they could smell an overwhelming smell of marijuana coming from the defendant's house. Well, I thought they said something about meth. They did. There was no meth lab there. What was the tip? Meth or marijuana? Marijuana. Nothing about meth? The only reason they mentioned meth was they were trying to get the defendant to consent to search, and they told him they received a tip about methamphetamine. They hadn't. The only tip was that he was selling marijuana at his house. And their testimony that there was an overwhelming smell of marijuana was true because there were 412 marijuana plants in the immediate vicinity. And the trial judge had recently concluded that 412 marijuana plants would indeed produce an overwhelming smell of marijuana. So the question is, did the officers do anything illegal up to the point where they came up and knocked on this defendant's door because at that point they had probable cause to take him into custody, to ask him for consent to search, to question him, whatever. So that's the issue in this case. Now, it's real simple. You can't have an illegal search and seizure unless you have an illegal search. Unless you have a search. And it's very well-established law that if you go up to somebody's house and knock on the door and you're a police officer, that's not a search. I've cited well over a dozen cases of that effect in my brief, but you really don't need the cases. I mean, it's simple common sense. Officers don't do anything illegal when they go up to someone's house and knock on the door. At least they don't do anything illegal under the Fourth Amendment. Illinois law doesn't create Fourth Amendment search and seizure law. It doesn't matter whether this was a trespass under Illinois law. What matters is whether it was a search under Fourth Amendment law. And all the cases say that if you walk up to someone's house and knock on their door, that's not a search. And that's simple common sense because, first, you don't intrude on any private place, and, second, police can't investigate anything unless they can knock on someone's door and ask to talk to them. What about the question of leaning in and seeing? I beg your pardon? The question, what about the contention that the defense has made that in order to see this quote-unquote plain view weapon, they had to lean into the property? There was. The officer who saw the gun testified that he was standing outside the property when he saw the gun. The trial judge was entitled to believe that testimony. And, you know, it makes sense. The gun was right there in plain view in the living room. He said he could see it standing at the front door. It's a question of fact to be resolved by the trial court. And, furthermore, it doesn't matter. It doesn't matter at all. The gun wasn't used to convict a defendant of anything. It wasn't used as evidence at the stipulated bench trial. He was never charged with a weapons offense. If the gun had never been seized, this case would be exactly the same. But, anyway, so all the cases say if you walk out someone's front door and knock on the door, that's not a search. Common sense says it. All the cases say it. So there was no search, so there could be no illegal search. I don't need the Oliver case to establish that. Real simple. No search, no illegal search. However, the Oliver case and the numerous cases that I cite in my brief, which follow Oliver, say that when there is no expectation of privacy protected by the Fourth Amendment, you can't create one by putting up a no trespassing sign. And I don't rely just on the Oliver case. I rely on well over a dozen cases interpreting it, most of which involve searches of something other than open fields. And, again, that makes perfect sense. If the Fourth Amendment doesn't create a reasonable expectation of privacy, someone can't create it by posting a sign. And even if it didn't make sense, that's what the U.S. Supreme Court says. So if you get this case down to what really matters, there's two principles of law, very well established, which indicate that this is a legal search and nothing I have to be ashamed of in defending it. First, a knock and talk is not a search, so it can't be an illegal search. Secondly, the U.S. Supreme Court and dozens of other courts have said that when there's no expectation of privacy protected by the Fourth Amendment, which there isn't, and you don't have an expectation of privacy to prevent someone from knocking on your door, then you don't create one by posting a no trespassing sign. So there was conflicting evidence as to whether there are no trespassing signs or not in this case, but it really doesn't matter because the officers didn't do anything illegal under the Fourth Amendment, which is the only possible grounds to suppress evidence. A knock and talk is legal. It doesn't intrude on any reasonable expectation of privacy. And a no trespassing sign can't create a reasonable expectation of privacy where there was none before it was posted. Those are well-established principles of law, and they mean that this search was legal. And for these reasons, we ask you to affirm the decision. As far as the consent to search goes, as I said, there was probable cause to arrest, so there was nothing at that point, and certainly for a Terry stop, so there's nothing illegal about detaining the defendant. And the voluntariness of the consent to search is definitely a question of fact for the trial court, and Judge Feist found that the consent was voluntary. As for the statements, again, it doesn't matter one bit because there was, as I say, 412 marijuana plants were discovered in this gentleman's house, in his garage, in his camper. There was more than enough evidence to convict him even if there had been no evidence whatsoever of the statement, and that evidence was stipulated, too, by the defense. So the gun doesn't matter because you're never charged with anything concerning the gun. The statement doesn't matter because there was enough stipulated evidence to prove him guilty even if he never made any statement. Thank you. Now, when they walked up to the house, did they pass the garage and shed? Where was that located? It's not entirely clear from the record, but I think the garage was off to the left in the camper. Was it attached or unattached? It was not an attached garage as far as I can determine from the record. But they couldn't smell it when they walked up? According to the officers, they smelled and overwhelmingly smelled the marijuana since they walked up to the house. So they smelled the marijuana, you say, before he opened the door? Correct. Is that in the evidence? Yes, it is. But they didn't say, we have probable cause to arrest you for marijuana because we can smell it. They didn't say that. And how many plants were in the house? It's in my brief, something less than 100. Okay. Well, thank you. Thank you, Counsel. Counsel? 67. I hope I didn't go too fast. But there are some things we need to clear up. And I'm going to cite page numbers in the transcript. And this is what page numbers stand for. The police did not disagree or dispute the fact that there was a no trespassing sign. That is the evidence. They said they don't remember, they don't dispute it, and they don't disagree that there may be that. And that can be found on pages 65, 75, 110, 160, 169, and 185. Now, something else very important that you've been misled on. Page 197, Officer Meyer agreed that by not arresting Franklin Dunham that day, the police officers kept their promise to Dunham. So there was a promise. He agreed. Agent Meyer agreed that by not arresting Franklin Dunham that day, the police officers kept their promise to Dunham. Now, I've dealt with a lot of facts. This case is a little bit older. But I would submit to you that they said they smelled the marijuana in the room. Now, something else that needs to be cleared up. If you review all the pictures, it's clear that guns and that you have to go in and look. And it would be beyond any reasonable people would not be able to look at that. And if you look at that, it's clear. But it is clear that it was posted in reference to standing. It's never been raised before. My client lived next door to Ron Tabarella. Ron owned the road. My client had an easement, and my client was the one who put up the sign. It was posted. Now, they want to say, well, the picture was taken afterwards. My client wasn't arrested until more than a year after the fact. I didn't get a hold of my client until over a year after. We don't think of things. We didn't know what it was. He didn't think it was that important. I obviously saw it when I went out there. Now, something else that's interesting. They videotaped. Cops are having a ball. They found a lot of marijuana. They took videotapes of everything. Everything. There's a couple of videotapes in the record. Now, isn't it strange that if you want to show, why don't they go out and show the way in, take it up there and see if it's there? I'll tell you, you know, they could have saved everybody a lot of trouble if they had done that and it wasn't there. But it was. It was. And if you look at it, in the picture, it's an old sign. It's weathered, rusted. You know, it's not something that was prodded out the next day. On his property? On the road leading to his property. No, it was on his property. It was on a road that he had an easement to to get to his property. He didn't actually own a judge. But he's got a legal easement to it. He has the right to control it. He's got a right to who can come on and off that property. And there's clearly nothing in evidence to the contrary. And standing was never raised. Now, I believe, and I'm running out of time, but we believe that we've hit the, there is no conflict in this evidence. The police officers agreed with everything I've said to you, except about the looking in. And only one officer said that. The other guy didn't get into that. Did the trial judge make any findings of facts? No, sir. No. He hadn't under advisement for like six months. But we don't know what the fact finding was. That's correct. And the only thing I can say, and I was listening to counsel and testifying that this doesn't matter. And this is done, it doesn't matter. It was almost scary to me because I think it should matter. You know, all of us in this courtroom are of a certain age. We're probably brought up that our parents said, you know, son or daughter, you've come to some place in time. There's going to be a point where you're asked to do something. And you've never confronted this issue. I want you to remember this. If it feels wrong, don't even think about doing it. And I'm telling you, and I mean this seriously, heart attack, in my humble experience, this feels wrong. You can just look at it from the start, from no probable cause, to the end. Thank you. Thank you, counsel. We appreciate the briefs and arguments of counsel. We will take the case under advisement.